United States District Court
Southern District of Texas
**ENTERED**
October 29, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **MOISES ANGEL FUENTES,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:25-CV-00153** |
| | § | |
| **TODD LYONS,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

**MEMORANDUM AND ORDER**

    Pending before the Court is Petitioner's Emergency Motion for Preliminary Injunction and Temporary Restraining Order. (Dkt. 16.) Petitioner challenges the lawfulness of his detention by Immigration and Customs Enforcement at the Rio Grande Processing Center in Laredo, Texas and argues that he received a constitutionally deficient bond hearing. (*Id.*) Because the Court has determined that it lacks jurisdiction to review the Immigration Judge's discretionary decision to deny Petitioner's bond, Petitioner's emergency motion, (Dkt. 16), is **DENIED**.

**Background**

    Petitioner is a 39-year-old citizen and national of Mexico who last entered the United States around 2005. (Dkt. 1 at 4; Dkt. 9 at 3.) He entered the U.S. without inspection, and he did not have contact with immigration authorities upon entry. (Dkt. 1, Attach. 2 at 3.) [1] Nearly 20 years later,

---

[1] The Parties have labeled their sub-filings as "Exhibits." However, the Court will use "Attachment" to refer to these sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries

Petitioner was detained by Immigrations and Customs Enforcement (ICE) on or around August 6, 2025, while he was on his way to work. (Dkt. 9, Attach. 1 at 2.)

Petitioner filed a petition for writ of habeas corpus and motion for preliminary injunction on September 20, 2025. (Dkts. 1, 2.) Respondents filed a Motion in Opposition to Petitioners Writ of Habeas Corpus and Motion to Dismiss on October 6, 2025. (Dkt. 9.) On October 8, 2025, Petitioner filed a reply in opposition to Respondent's Motion to Dismiss. (Dkt. 11.) On October 14, 2025, Respondents also filed their Opposition to Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order (TRO). (Dkt. 14.)

On October 16, 2025, the Court granted Petitioner's Petition for Writ of Habeas Corpus in part and ordered Respondents to release Fuentes unless he was provided a bond hearing pursuant to 8 U.S.C. § 1226(a) by October 24, 2025. (Dkt. 15.) In the same order, the Court denied Respondents Motion to Dismiss and also denied Petitioner's initial Motion for Preliminary Injunction and TRO as moot. (*Id.*) The Court further ordered the parties to provide a status update to the Court before 5 P.M. on October 28, 2025. (*Id.*)

On October 17, 2025, Respondents filed a motion for bond with the Immigration Court and served Fuentes through his Deportation officer. (Dkt. 16, Attach. 1 at 5.) On October 20, 2025, at 8 A.M., the Immigration Court notified Petitioner's Counsel about Respondents' Motion for Bond by emailing her a hearing notice for the bond case and a scheduling order. (*Id.*) Petitioner's Counsel did not receive the information until 9:30 A.M. because she was meeting with another client. (*Id.*) The Immigration Judge (IJ) ordered that all evidence and the parties' position on the case be filed no later than 48 hours before the bond hearing, and that late filings would be "disfavored." (*Id.*) The IJ set the bond hearing for October 22, 2025, at 2 P.M. (*Id.*) As a consequence, Petitioner's Counsel had a 6-hour filing window. (*Id.*) Petitioner's Counsel met the filing deadline and

submitted 40 exhibits as evidence in support of Petitioner's Bond Eligibility (Dkt. 16, Attach. 2 at 34–37.)

The IJ held a bond hearing for Petitioner on October 22, 2025, during which Petitioner and Petitioner's counsel were present and made arguments as to whether Petitioner's release posed a danger to the community and whether Petitioner was a flight risk if released. (Dkt. 16, Attach. 1 at 6–8.) During the bond hearing, Petitioner was questioned by the IJ, afforded an opportunity to speak, and counsel made arguments relevant to the custody determination. (*Id.*) The IJ denied bond, finding that Petitioner did not meet his burden to show that he would not be a danger to the community if released from custody. (Dkt. 16 Attach. 2 at 3.)

Following the IJ's denial of bond, on October 24, 2025, Petitioner filed an emergency motion for preliminary injunction and temporary restraining order asking the Court to declare that Petitioner's bond hearing was constitutionally inadequate and requesting that the Court order a new constitutionally adequate bond hearing and if the bond hearing cannot be completed with time for Petitioner to post bond prior to October 31st, that his merits hearing in his immigration case be enjoined; alternatively, Petitioner also asks the Court to determine that the bond hearing that took place was so deficient that it constituted a violation of this Court's October 16th Order. (Dkt. 16, Attach. 1 at 5.)

On October 28, 2025, the parties both filed status updates per the Court's October 16th Order, notifying the Court that the bond hearing took place. (Dkts. 17, 18.)

## Legal Standard

The standard for obtaining a TRO is the same as that for obtaining a preliminary injunction. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The plaintiff must

establish the following four elements to obtain a TRO: "(1) a substantial likelihood that plaintiff will succeed on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the [TRO] is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the [TRO] may do to defendant, and (4) that granting the [TRO] will not disserve the public interest. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *see also Winter*, 555 U.S. at 24.

### Discussion

Having considered this matter, the Court determines that it is stripped of jurisdiction by 8 U.S.C. § 1226(e) and therefore cannot review Petitioner's claims regarding the IJ's discretionary denial of bond. To the extent Petitioner's claims can be construed as arguing that the provided bond hearing was constitutionally deficient, the Court holds that Petitioner has not demonstrated a substantial likelihood of success on the merits.

Jurisdiction is a threshold question. *See Florida v. Thomas*, 532 U.S. 774, 777 (2001) ("we must first consider whether we have jurisdiction to decide this case."). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims."(citing *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir. 1994)); *cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999) ("Subject-matter limitations . . . keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." (citations omitted)).

Congress provided in 8 U.S.C. § 1226(e) that:

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Thus, district courts do not have jurisdiction to review discretionary decisions made by an IJ regarding bond. *See Nielsen v. Preap*, 586 U.S. 392, 401 (2019) ("As we have held, this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases.")

But this prohibition does not extend to constitutional challenges to the statutory framework or extent of the Government's detention authority. *See Diallo v. Pitts*, 2020 WL 714274, at *6 (S.D. Tex. Jan. 15, 2020), *R & R adopted*, 2020 WL 709326 (S.D. Tex. Feb. 12, 2020). "[Section 1226(e)] does not block lawsuits over 'the extent of the Government's detention authority under the 'statutory framework' as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018)); *see Demore v. Kim*, 538 U.S. 510, 517 (2003).

"Section 1226(e) may strip [courts] of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive [courts] of all authority to review statutory and constitutional challenges. [Courts] retain jurisdiction to review [a noncitizen's] detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished op.) (citing *Demore*, 538 U.S. at 516–17); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, Petitioner argues that the Government deprived him of his due process rights by providing him with a constitutionally inadequate bond hearing. (Dkt. 16, Attach. 1 at 8.) Petitioner argues that the bond hearing was constitutionally deficient because Petitioner was not provided adequate notice and because the IJ relied on inadmissible evidence. (*See Id*. at 11–13.) The Court addresses both arguments in turn.

While Petitioner acknowledges that "the Immigration Court notified Petitioner's counsel by emailing her a Hearing Notice for the bond case and scheduling order," Petitioner argues that the Government initially "served the bond motion on Petitioner rather than on Petitioner's counsel, which resulted in Counsel not knowing that the bond motion was pending." (Dkt. 16, Attach. 1 at 5, 11.) Petitioner explains that after Petitioner's Counsel received notice of the bond hearing there was only a 6-hour filing window, and that "the Immigration Court could have set the bond hearing for a later date to give the parties more time to file documentation or adjusted its standard Scheduling Order." (*Id*. at 6.)

The Court finds that the Government's notice and short window of time to submit filing, while unfortunate, likely does not raise to the level of constitutionally deficient notice. Petitioner and Petitioner's counsel were notified that he was scheduled for a custody redetermination hearing, able to file evidence in support of Petitioner's custody redetermination, and present for the bond hearing. (*See Id*. at 5–6.) The Court is therefore unable to find a substantial likelihood that there was constitutionally deficient notice in this case.

Petitioner further argues that "the most egregious and prejudicial violations occurred during the Bond Hearing Itself. The IJ chose to ignore established precedent regarding the admissibility and use of police reports in immigration court proceedings." (*Id*. at 11.) Absent a statutory or constitutional violation, the Court lacks jurisdiction to review the underlying conduct

of the IJ during the custody redetermination hearing. *See Oyelude*, 125 F. App'x at 546. While Petitioner argues that the IJ considered inadmissible evidence during the hearing and "demonstrated prejudice" toward Fuentes, adjudicating these arguments would require the Court to assess the underlying discretionary bond determination itself, not an alleged constitutional or statutory deficiency. (*See* Dkt. 16, Attach. 1 at 7.) The Court is not able to identify any allegations or evidence submitted by Petitioner that the conduct of the IJ during the bond hearing resulted in a constitutionally or statutorily inadequate bond hearing. (*See* Dkt. 16.)

Because Petitioner has failed to demonstrate a substantial likelihood of success on the merits that his bond hearing was constitutionally deficient, and the Court does not have jurisdiction to review the underlying discretionary decision by the IJ to deny bond, the Court is unable to grant Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

### Conclusion

For the foregoing reasons, Fuentes' Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. 16), is **DENIED**.

IT IS SO ORDERED.

SIGNED this October 29, 2025.

Diana Saldaña
United States District Judge